## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| JOHNATHAN R. KIRKENDOLL, | CASE NO. 1:21-CV-01759 |
| Petitioner, | JUDGE DAVID A. RUIZ |
| vs. | |
| WARDEN CHARMAINE BRACY, | MAGISTRATE JUDGE AMANDA M. KNAPP |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Johnathan R. Kirkendoll ("Petitioner" or "Mr. Kirkendoll") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  (ECF Doc. 1 ("Petition").)  Mr. Kirkendoll filed his Petition on September 6, 2021.[1]  (*Id*.)  His Petition relates to his convictions for burglary, menacing by stalking, and assault, and his aggregate prison sentence of 8 years and 4 months in Lorain County Common Pleas Case No. 18CR099474, following a jury trial.  (ECF Doc. 1; ECF Doc. 8-1, pp. 25, 108.)  The Petition is fully briefed.  (ECF Docs. 8 & 10-1.)

This matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth in further detail herein, the undersigned recommends that the Court **DISMISS** Mr. Kirkendoll's Petition as barred by the statute of limitations.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Kirkendoll placed his Petition in the prison mailing system on September 6, 2021 (ECF Doc. 1, p. 17) and his Petition was docketed on September 10, 2021 (*id*).

## I.      Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Ninth District Ohio Court of Appeals summarized the facts underlying Mr. Kirkendoll's conviction and sentence as follows:

{¶2} Kirkendoll and the victim knew each other since childhood. But it was not until around March 2016 that the two began dating. After the victim moved to the west side of Lorain into an apartment, around Christmastime 2017, Kirkendoll began getting violent with the victim. Around this time, the building manager of the apartment sent Kirkendoll a notice and informed the victim that Kirkendoll was no longer allowed at the complex as he had previously kicked in the door of the apartment. The victim told the building manager that the victim informed Kirkendoll that he was no longer permitted there. The victim maintained that Kirkendoll never lived with the victim in her west side apartment. She further asserted that Kirkendoll was not on the lease and did not have a key. Only the victim and her young daughter were listed on the lease. However, Kirkendoll did stay at the victim's apartment "a lot[,]" and occasionally for periods of a couple weeks at a time.

{¶3} On August 9, 2018, Kirkendoll drove the victim to the hospital so that she could have emergency surgery due to an ectopic pregnancy. While at the hospital, Kirkendoll became irritated with the victim and the victim had to have Kirkendoll removed from the hospital. After the surgery, the victim went to stay at her mother's house and parked her car at a friend's house. She was afraid Kirkendoll would damage her car because he had made threats that he would do so.

{¶4} The next morning, Kirkendoll wanted the victim to drive him to a court date but the victim explained that, because of her surgery, she was not allowed to drive. Shortly thereafter, the victim received a phone call from Kirkendoll telling her that she "might as well call the police and everything. [Kirkendoll] just destroyed [her] TV and everything else." The victim called the police and had the officer come to her mother's house because she was too afraid to go to her apartment. She told police that her apartment had been broken into and destroyed. The police retrieved a key from the victim and went to her apartment. The police discovered no forced entry but found the apartment in disarray. Bleach was poured all over, furniture was

2

cut, food was thrown around, and the TV was smashed. Once police arrived, the victim returned to her apartment to survey the damage.

{¶5} With respect to the events of August 10, 2018, Kirkendoll was charged with one count of burglary, one count of criminal damaging, and one count of criminal mischief.

{¶6} On August 17, 2018, Kirkendoll was over and began asking the victim questions about different men. Kirkendoll then demanded the victim's phone and told the victim that she was "gonna tell [him] everything [he] want[ed] to know or [he was] gonna beat [her] to death or kill [her]." The victim believed he would do it because he had hurt her before. At the time, the victim's daughter was in another room in the apartment. As the victim gave Kirkendoll the phone, she ran out of the apartment and Kirkendoll followed her. The two struggled and Kirkendoll tried to drag the victim back into the apartment. During the struggle, the victim's arm was broken. When the victim broke free, she ran to the manager's building and called the police, but the police were unable to respond to the call at the time. Once the victim was sure that Kirkendoll was gone from the apartment, she returned to get her daughter. Thereafter, the victim went to the police station to file a report.

{¶7} After the victim left the police station, she was too afraid to go back to the apartment. Later that day, the building manager was informed by a tenant that Kirkendoll had returned. Footage from the surveillance camera depicts an individual identified as Kirkendoll kicking in the door to the victim's apartment, entering the apartment, and minutes later leaving. The building manager called the police and the victim was informed of the incident. Police only talked to the victim on the phone as she was too afraid to return to the apartment even with police presence.

{¶8} With respect to the events of August 17, 2018, Kirkendoll was charged with one count of burglary, one count of menacing by stalking, one count of assault, and one count of criminal trespass.

{¶9} After that day, Kirkendoll continued to "constantly" call the victim's phone. On September 5, 2018, an officer responded to the victim's apartment because she had called police stating that Kirkendoll had called her and was en route to her apartment. The officer arrived and checked the property and residence but Kirkendoll was nowhere to be found. Around 15 to 20 minutes later, the victim again called police and informed police that Kirkendoll "was actively kicking in the door to her residence." When the officer arrived, he found "the door to be kicked in, partially opened with the door frame cracked." Kirkendoll was not located. The officer described the victim as "[t]errified" and that "she looked like she had been crying and she was very scared." Surveillance video shows a person identified as an acquaintance of Kirkendoll knock at the door and leave. Shortly thereafter, a person identified as Kirkendoll approaches the door, knocks, and leaves. Seconds

later, Kirkendoll reappears, knocks on the apartment door, waits, turns to leave but then kicks the door, and then leaves.

{¶10} As to the September 5, 2018 incidents, Kirkendoll was charged with menacing by stalking, criminal damaging, and criminal trespass.

{¶11} The matter proceeded to a jury trial. The jury found Kirkendoll guilty of all of the charges aside from the burglary charge related to the events of August 10, 2018. The trial court sentenced Kirkendoll to an aggregate term of eight years and four months. In so doing, the trial court ordered two of the counts to run consecutively.

*State v. Kirkendoll*, 2019-Ohio-5019, ¶¶ 2-11, 2019 WL 6700944, at *1-2 (Ohio App. Ct. 2019);

(ECF Doc. 8-1, pp. 105-08.)

## II.     Procedural Background

### A.     State Court Conviction

On November 14, 2018, the Lorain County Grand Jury charged Mr. Kirkendoll with two counts of burglary in violation of R.C. § 2911.12(A)(2) (Counts 1, 2), two counts of menacing by stalking in violation of R.C. § 2903.211(A)(1) (Counts 3, 4), one count of assault in violation of R.C. § 2903.13(A) (Count 5), two counts of criminal damaging or endangering in violation of R.C. § 2909.06(A)(1) (Counts 6, 7), one count of criminal mischief in violation of R.C. § 2909.07(A)(1)(a) (Count 8), and two counts of criminal trespass in violation of R.C. § 2911.21(A)(3) (Counts 9, 10).  (ECF Doc. 8-1, pp. 4-7.)  The charges stemmed from conduct occurring on August 10, 2018, August 17, 2018, and September 5, 2018.  (*Id*.)  Mr. Kirkendoll was arraigned and pled not guilty to all charges on November 29, 2018.  (*Id*. at p. 9.)

Mr. Kirkendoll's jury trial commenced on January 14, 2019, and continued through January 16, 2019.  (ECF Doc. 8-1, pp. 11, 185; ECF Doc. 8-2, pp. 12-172; ECF Doc. 8-3, pp. 2-138.)  The jury returned a not guilty verdict on the one burglary count stemming from conduct occurring on August 10, 2018 (Count 1) and guilty verdicts on the remaining nine counts,

4

stemming from conduct occurring on August 10, 2018, August 17, 2018, and September 5, 2018. (ECF Doc. 8-1, pp. 4-7, 11-23; ECF Doc. 8-3, pp. 134-38.)  On January 16, 2019, the trial court found Mr. Kirkendoll guilty on Counts 2, 3, 4, 5, 6, 7, 8, 9, and 10 and sentenced Mr. Kirkendoll to an aggregate prison term of 8 years and 4 months, ordering all counts to run concurrently to each other, except that Count 4 would run consecutively to the other counts.  (ECF Doc. 8-1, pp. 11, 25-30; ECF Doc. 8-3, pp. 138-51.)  The journal entry finding Mr. Kirkendoll guilty, verdict forms, and the judgment entry of conviction and sentence were entered on January 18, 2019. (ECF Doc. 8-1, pp. 11-23, 25.)

**B.      Direct Appeal**

On February 1, 2019, Mr. Kirkendoll, through counsel, filed a notice of appeal in the Ninth District Court of Appeals.  (ECF Doc. 8-1, pp. 32-33.)  In his June 11, 2019 appellate brief, Mr. Kirkendoll raised the following five assignments of error:

> 1. Defendant did not receive effective assistance of counsel as guaranteed by the Sixth Amendment.
>
> 2. The trial court denied Appellant due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, by being vindictive in its sentencing for exercising his rights to not plead guilty and have his case tried before a jury.
>
> 3. The court erred by sentencing Appellant to consecutive sentences in violation of R.C. 2929.41 and in violation of his rights under the Sixth and Fourteenth Amend[]ments to the United States Consti[t]ution, and Article I, Sections 10 and 16 of the Ohio Consti[t]ution.
>
> 4. The trial court erred in denying Mr. Kirkendoll's motion to dismiss in violation of ORC 2945.71 and ORC 2945.72 as well as the United States and State of Ohio Constitutions as Mr. Kirkendoll's right to a speedy trial was violated.
>
> 5. The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

5

(*Id*. at pp. 35-38.)  The State filed a brief in response on July 10, 2019.  (*Id*. at pp. 70-103.)  The court of appeals affirmed the trial court judgment on December 9, 2019.  (*Id*. at pp. 105-23.)

On February 18, 2020, Mr. Kirkendoll filed a pro se notice of appeal in the Supreme Court of Ohio, accompanied by a motion for delayed appeal and a motion to certify conflict and dismiss charges.  (ECF Doc. 8-1, pp. 125-79.)  On April 14, 2020, the Supreme Court of Ohio denied Mr. Kirkendoll's motion for delayed appeal, dismissing the case and denied his motion to certify a conflict and dismiss charges (*id.* at pp. 181, 191), with three justices dissenting and indicating they would grant the motion for delayed appeal, *State v. Kirkendoll*, 158 Ohio St. 3d 1464 (2020).

**C.     Federal Habeas Corpus Petition**

Mr. Kirkendoll raises the following five grounds for relief in his Petition:

**GROUND ONE**: Petitioner rights as guaranteed by 6th & 14th Amendment to United States Constitution were violated when he was denied the effective assistance of counsel.

**Supporting Facts**: (1) Petitioner's counsel failed to investigate a defense and/or file for discovery in this case; (2) Petitioner's counsel failed to seek and/or obtain evidence that proved Petitioner's innocence; (3) Petitioner's counsel failed to file a motion to dismiss in light of speedy trial violation; and (4) Petitioner's counsel failed to make objections to the trial court altering jury instructions for two of the same charged offense(s) of burglary.

**GROUND TWO**:  Petitioner's Due Process Rights as guaranteed by the 5th & 14th Amendment to United States Constitution were violated when the trial court vindictively sentenced him for exercising his right to not plead guilty and have his case tried before a jury.

**Supporting Facts**: Petitioner was offered a three (3) year sentence if he pled guilty due to his criminal history and basic knowledge of the alleged crime.  At sentencing the court sentenced Petitioner to over eight years in prison reasoning it was due to his criminal history and crime.  The court findings do not support Petitioner's sentence, as it was based on Petitioner not pleading out.

6

**GROUND THREE**: Petitioner's Rights as guaranteed by the 6th & 14th Amendment to the United States Constitution were violated when the court erred by sentencing Petitioner to consecutive sentences in violation of R.C. 2929.14.

**Supporting Facts**: The evidence adduced at trial and the findings made by the court do not support Petitioner's sentence.

**GROUND FOUR**: Petitioner's Due Process Rights as guaranteed by the 14th Amendment to the United States Constitution were violated when the trial court denied Petitioner's Motion to Dismiss in violation of O.R.C. 2945.71 and O.R.C. 2945.72 as Petitioner's right to a speedy trial was violated.

**Supporting Facts**: The court did not present any evidence that defendant was being held on any other matter for purposes of calculating speedy trial.  Defendant went to trial after being held one hundred and fourteen (114) days.

**GROUND FIVE**: The verdict in this case is against the sufficiency of the evidence and must be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts**: The State did not prove their case against Petitioner beyond a reasonable doubt, as the evidence present do not establish Petitioner's guilt.

(ECF Doc. 1 pp. 5-14.)

## III.     Law & Analysis

Respondent argues that Mr. Kirkendoll's Petition should be dismissed or denied for several reasons.  First, Respondent argues that Mr. Kirkendoll's Petition should be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A), which starts the running of AEDPA's statute of limitations from the date on which the judgment becomes final by the conclusion of direct review or expiration of time for seeking such review; Respondent further asserts that statutory tolling does not make the Petition timely, and that the record does not support equitable tolling. (ECF Doc. 8, pp. 8-12.)  Second, Respondent argues that Mr. Kirkendoll's Petition should be dismissed based on procedural default because he failed to timely appeal the court of appeals' affirmance of his conviction and sentence to the Supreme Court of Ohio; Respondent further asserts that Mr. Kirkendoll cannot show cause to excuse his procedural default.  (*Id*. at pp. 12-

18.)  Third, Respondent argues that Mr. Kirkendoll's Petition should be denied because his five grounds for relief are not cognizable on federal habeas review and/or are without merit given the deference afforded state court determinations under AEDPA.  (*Id*. at pp. 18-33.)

In response, Mr. Kirkendoll argues that his Petition should be deemed timely filed under AEDPA's one-year statute of limitations based on statutory tolling under §2244(d)(2).  (ECF Doc. 1, p. 16; ECF Doc. 10-1, p. 3.)  As to procedural default, Mr. Kirkendoll asserts that his untimely filing with the Supreme Court of Ohio should be excused due to unreasonable delays by the institution and in the mail, and asserts that Ohio courts "prejudicially" do not recognize the "mail-box rule" as do the federal courts.  (*Id*. at pp. 1-3.)  Finally, he argues that the state court of appeals' adjudication of his claims was not reasonable, and his Petition should be granted on the merits.  (*Id*. at pp. 3-20.)

For the reasons set forth below, the undersigned concludes that the Petition is barred by the statute of limitations.  Accordingly, the undersigned will not address Respondent's alternative procedural default and merits arguments.  Instead, the undersigned recommends that the Court **DISMISS** the Petition as barred by the statute of limitations.

## A.    Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution

or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted unless the adjudication of the claim":

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *See Cullen*, 563 U.S. at 181.

**B.     AEDPA Statute of Limitations**

28 U.S.C. § 2244 limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus, providing in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

**C.      Petition is Untimely Under §2244(d)(1)(A)**

Respondent argues that Mr. Kirkendoll's September 6, 2021 Petition is untimely under 28 U.S.C. § 2244(d)(1)(A) because the statute of limitations expired on March 22, 2021, even after applying statutory tolling under § 2244(d)(2), and the record does not support equitable tolling. (ECF Doc. 8, pp. 8-12.)  In response, Mr. Kirkendoll argues that his Petition was timely filed on September 6, 2021, because he did not exhaust his state remedies until April 14, 2020, when the Supreme Court of Ohio denied his motion for delayed appeal, and was then entitled to statutory tolling for an additional 150 days to seek certiorari with the Supreme Court of the United States before the one-year clock under §2244(d)(1) started to run, making his Petition due on or around September 14, 2021.  (ECF Doc. 1, p. 16; ECF Doc. 10-1, p. 3.)

The undersigned first considers the timeliness of Mr. Kirkendoll's Petition under §2244(d)(1)(A), which starts the running of AEDPA's statute of limitations from the date on which the judgment becomes final by the conclusion of direct review or expiration of time for seeking such review.[2]  Mr. Kirkendoll's conviction and sentence were affirmed by the Ohio Court of Appeals on direct appeal on December 9, 2019.  (ECF Doc. 8-1, pp. 105-23.)  Mr. Kirkendoll then had 45 days to file an appeal with the Supreme Court of Ohio.  *See* S.Ct.Prac.R. 6.01(A)(1).  His notice of appeal was therefore due on January 23, 2020.  Mr. Kirkendoll did not file a notice of appeal by that date.  Accordingly, the one-year statute of limitations under §2244(d)(1)(A) started to run on January 24, 2020, and expired on January 23, 2021.

---

[2] Mr. Kirkendoll argues that his Petition is timely when statutory tolling is considered under § 2244(d)(2), but he does not argue that the statute of limitations should be analyzed under any other subsection of § 2244(d)(1) nor is it apparent from the record that any other subsection of § 2244(d)(1) would apply.

Mr. Kirkendoll did not file his Petition until September 6, 2021, more than seven months after the statute of limitations expired.  Because the Petition was not filed until after the limitations period expired, it is time-barred under §2244(d)(1)(A) unless the statute of limitations was tolled through statutory or equitable tolling.

The undersigned therefore turns to the question of tolling.

**1.      Whether Statute of Limitations Was Tolled Under 28 U.S.C. § 2244(d)(2)**

AEDPA's statutory tolling provision provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).  Thus, under section 2244(d)(2), the statute of limitations is tolled for as long as a properly filed application for post-conviction relief or other collateral review is pending in the state courts.  *See Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003).  This statutory tolling continues "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), and further "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review," *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (internal quotations omitted).

Section 2244(d)(2) does not toll the limitations period during the filing of a subsequent petition for certiorari to the United States Supreme Court because such a petition is federal and therefore "not a part of a 'State's post-conviction procedures.'" *Lawrence v. Fla.*, 549 U.S. 327, 337 (2007) (quoting 28 U.S.C. § 2244(d)(2)).  In addition, the tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations

11

and citation omitted). Thus, once the limitations period has expired, a "collateral petition[] can no longer serve to avoid a statute of limitations." *Id.*

Mr. Kirkendoll filed a motion for delayed appeal in the Supreme Court of Ohio on February 18, 2020. (ECF Doc. 8-1, p. 133.) A motion for delayed appeal is not part of the direct appeal for purposes of calculating the one-year statute of limitations under § 2244(d)(1) and does not restart the statute of limitations; however, the motion does toll the statute of limitations under § 2244(d)(2) if it is properly filed. *See DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006) (citing *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir. 2001)); *see also Vroman,* 346 F.3d at 602 (tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run") (internal quotations and citation omitted). Thus, the statute of limitations ran for 25 days—from the start of the limitations period on January 24, 2020, through the filing of the motion for delayed appeal February 18, 2020—and was tolled until April 14, 2020, when the Supreme Court of Ohio denied the motion. (ECF Doc. 8-1, p. 181.)

Since a motion for delayed appeal is an application for collateral review, Mr. Kirkendoll was not entitled to further statutory tolling under § 2244(d)(2) for the time during which he could have sought certiorari in the United States Supreme Court.[3] *See Lawrence*, 549 U.S. at 334–37 (finding "the filing of a petition for certiorari before [the U.S. Supreme] Court does not toll the statute of limitations under § 2244(d)(2)"); *see also Foster v. Bobby*, 2010 WL 1524484, at *3–4 (N.D. Ohio Apr. 15, 2011) (noting "district courts within the Sixth Circuit have consistently held that a habeas petitioner is not entitled to § 2244(d)(2) tolling for the 90–day period following the denial of a motion for delayed appeal, because such a motion is an application for collateral

---

[3] Mr. Kirkendoll did not file a petition for certiorari with the United State Supreme Court.

review") (discussing and relying on cases, including *Lawrence*, 549 U.S. at 334 and *Searcy*, 246 F.3d 515).  Thus, the statute of limitations resumed running on April 15, 2020, when the Supreme Court of Ohio denied Mr. Kirkendoll's motion for a delayed appeal.[4]  There were 340 days remaining on the statute of limitations at that time, and the statute of limitations therefore expired on March 21, 2021, which fell on a Sunday.  Mr. Kirkendoll had until March 22, 2021, the next business day, to file his Petition.  *See* Fed. R. Civ. P. 6(a)(1)(C).

Contrary to Mr. Kirkendoll's position (ECF Doc. 1, p. 16), his statute of limitations clock did not start to run when the Supreme Court of Ohio denied his motion for delayed appeal on April 14, 2020.  (ECF Doc. 1, p. 16; ECF Doc. 10-1, p. 3.)  As explained above, his motion for delayed appeal was not part of his direct appeal for purposes of calculating the one-year statute of limitations.  *See DiCenzi*, 452 F.3d at 468 (citing *Searcy,* 246 F.3d at 519).  Also contrary to Mr. Kirkendoll's position, he was not entitled statutory tolling during the time when he could seek certiorari with the Supreme Court of the United States.  (ECF Doc. 1, p. 16; ECF Doc. 10-1, p. 3.)  His reliance on *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003), for the proposition that "the time for filing certiorari tolls the time for filing a habeas corpus petition" is misplaced, as the Sixth Circuit has recognized that the Supreme Court overruled *Abela* in *Lawrence*, 549 U.S. 327.  *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750, 753 (6th Cir. 2011).[5]

---

[4] Petitioner asserts that he would have had 150 days to seek certiorari in the United States Supreme Court (ECF Doc 1, p. 16; ECF Doc. 10-1, p. 3), while Respondent asserts that he would have had only 90 days (ECF Doc. 8, pp. 11-12).  The United States Supreme Court issued orders on March 19, 2020, and April 15, 2020, during the COVID-19 pandemic.  *See Order List: 594 United States*, 2021 U.S. LEXIS 3591 (U.S. 2021).  Those orders extended the time in which a petition for writ of certiorari had to be filed from 90 to 150 days.  *Id.*  After the orders were rescinded on July 19, 2021, the extension of time continued to apply "in any case in which the relevant lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing was issued prior to July 19, 2021."  *Id.*  But it is irrelevant that Mr. Kirkendoll would have had 150 days to file a petition for certiorari in the Supreme Court, since statutory tolling was not available during that time period for the reasons explained above.

[5] Even if Mr. Kirkendoll was provided the benefit of 150 additional days of tolling for the period in which he could have, but did not, file a petition for certiorari, the following calculation demonstrates that his Petition would nevertheless be untimely.  If the statute of limitations was tolled for an additional 150 days from April 14, 2020, the statute of limitations would have started to run again on September 12, 2020.  At that point, 25 days of Mr.

For the reasons explained above, even considering statutory tolling under § 2244(d)(2), Mr. Kirkendoll's Petition was due on March 22, 2021.  Because his Petition was not filed until September 6, 2021, over five months later, it was untimely even with statutory tolling.

### 2.     Whether Equitable Tolling is Warranted

In addition to statutory tolling, the AEDPA statute of limitations may be equitably tolled in appropriate circumstances.  The Supreme Court has explained that this defense "is not jurisdictional" and "does not set forth an inflexible rule requiring dismissal whenever its clock has run."  *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (internal quotations omitted).  Equitable tolling allows federal courts to excuse the statute of limitations bar where tolling is appropriate to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules."  *Holland*, 560 U.S. at 650 (internal quotations omitted).  There are generally two forms of equitable tolling available in this context, traditional equitable tolling and tolling based on "actual innocence."

To support traditional equitable tolling, a petitioner must show that: (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649 (internal citations and quotations omitted); *Hall*, 662 F.3d at 749.  Tolling is evaluated on a case-by-case basis and must be "applied sparingly," with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

Respondent argues that Mr. Kirkendoll has not demonstrated a basis to apply equitable tolling.  (ECF Doc. 8, pp. 11-12.)  Petitioner's argument for tolling is focused on his argument

---

Kirkendoll's one-year statute of limitations had already lapsed.  Thus, he had 340 days, or until August 18, 2021, to file his Petition.  He did not file his Petition until September 6, 2021.

that the statute of limitations was tolled for the 150 days during which he could have petitioned for certiorari in the United States Supreme Court for the denial of his motion for delayed appeal. (ECF Doc. 1, p. 16; ECF Doc. 10-1, p. 3.)  For the reasons explained in Section III.C.1., *supra*, his motion for delayed appeal did not restart the one-year statute of limitation and he was not entitled to statutory tolling for the time during which he could have filed a petition for certiorari. His misunderstanding of AEDPA's statute of limitations or of how AEDPA's tolling provisions applied in his case does not warrant equitable tolling, as a petitioner's "*pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse . . . late filing."  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012); *see also Hall*, 662 F.3d at 750–752 (lack of transcript, pro se status and limited law library access did not warrant equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding "lack of legal training, [a petitioner's] poor education, or even [a petitioner's] illiteracy" are not reasons to toll the statute of limitations).

While Mr. Kirkendoll may contend that he was diligent, the record shows otherwise.  His Petition was filed more than five months after the statute of limitations expired, even with the benefit of statutory tolling, and Mr. Kirkendoll has not argued or shown that any extraordinary circumstances stood in his way of timely filing.  While he argues in Ground One that his trial attorney was ineffective in various ways (ECF Doc. 1, p. 5; ECF Doc. 10-1, pp. 4-5) at trial, "[a]ttorney neglect or error does not generally give rise to equitable tolling," *see Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012), and he does not explain how his trial attorney's alleged ineffectiveness was an extraordinary circumstance that stood in his was way of timely filing his Petition.  For these reasons, the undersigned finds that traditional equitable tolling is not warranted.

The Supreme Court has also found that equitable tolling may apply where a petitioner "can credibly demonstrate actual innocence." *Hubbard v. Rewerts*, 98 F.4th 736, 742 (6th Cir. 2024) (citing *McQuiggin v. Perkins*, 569 U.S. at 386); *see also Patterso*n, 455 F. App'x at 609 (explaining that a petitioner "may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice") (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)). An actual-innocence "equitable-exception claim requires the presentation of 'new reliable evidence'" not presented at trial. *Hubbard*, 98 F.4th at 743 (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)). "As for reliability, the [Supreme] [C]ourt illustratively listed 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence' as examples of 'reliable evidence'" observing that "[s]uch evidence . . . is 'obviously unavailable in the vast majority of cases,' because actual-innocence claims are 'rarely successful.'" *Id.* New reliable evidence must be presented by a petitioner to demonstrate his actual innocence under this equitable exception, but courts are directed to look to the entire record to determine whether a credible claim of actual innocence has been established. *Id*. (citing *House v. Bell*, 547 U.S. 518, 537 (2006)). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (internal quotation marks omitted). Thus, to be entitled to equitable tolling, a petitioner must do "more than only undermine the state's case." *Hubbard*, 98 F.4th at 748.

In considering this standard, the undersigned observes that Mr. Kirkendoll has not directly argued for equitable tolling based on actual innocence. Further, although Mr. Kirkendoll asserts in Ground One that his trial attorney was ineffective (ECF Doc. 1, p. 5; ECF Doc. 10-1, pp. 4-5) and in Ground Five that the evidence was insufficient to convict him of the charges

(ECF Doc. 1, pp. 12-13), he must do more than undermine the state's case against him to meet the actual innocence standard. *Hubbard*, 98 F.4th at 748. Given that equitable tolling based on actual innocence "is reserved for only the most extraordinary case[s]," *id* at 747, and that Mr. Kirkendoll has not developed an argument in support of equitable tolling based on actual innocence, the undersigned finds that equitable tolling based on actual innocence is not warranted.

Based on the record, the undersigned finds no grounds to apply equitable tolling to extend the statute of limitations beyond March 22, 2021. Thus, Mr. Kirkendoll's Petition, filed on September 6, 2021, is untimely under §2244(d)(1)(A).

### IV.    Recommendation

For the reasons set forth above, the undersigned recommends that the Court the **DISMISS** Mr. Kirkendoll's Petition as barred by the statute of limitations.

Dated: June 11, 2024

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).